**A. Jacques LOU, Plaintiff/Appellee,**

v.

**William BELZBERG; Hyman Belzberg; Samuel Belzberg; First City Financial Corporation; First City Trust Company; Roxboro Investments Ltd.; Bel–**

Fran Investments Ltd.; Bel–Cal Holdings Ltd.; Bel–Alta Holdings Ltd.; Drexel Burnham Lambert Inc.; John R. Hall; Robert T. McCowan; William R. Seaton; Charles J. Luellen; Samuel C. Butler; Eugene W. Erikson; James B. Farley; Robert D. Gordon; Walter W. Hillenmeyer; Don T. McKone; Harold S. Mohler; Grover E. Murray; Jane C. Pfeiffer; Robert S. Reigeluth; James R. Rinehart; F.H. Ross; Robert Stobaugh; Richard L. Terrell; James W. Vandereer; Ashland Oil, Inc., Defendants/Appellees,

Pauline Mickler; Erwin A. Sherman; Lynch, Sherman & Cox; Merrill G. Davidoff; Sherrie R. Savett; Berger & Montague, P.C., Respondents/Appellants.

**A. Jacques LOU, Plaintiff/Appellant,**

v.

**William BELZBERG; Hyman Belzberg; Samuel Belzberg; First City Financial Corporation; First City Trust Company; Roxboro Investments Ltd.; Bel–Fran Investments Ltd.; Bel–Cal Holdings Ltd.; Bel–Alta Holdings Ltd.; Drexel Burnham Lambert Inc.; John R. Hall; Robert T. McCowan; William R. Seaton; Charles J. Luellen; Samuel C. Butler; Eugene W. Erikson; James B. Farley; Robert D. Gordon; Walter W. Hillenmeyer; Don T. McKone; Harold S. Mohler; Grover E. Murray; Jane C. Pfeiffer; Robert S. Reigeluth; F.H. Ross; Robert B. Stobaugh; Richard L. Terrell; James W. Vandereer, Defendants/Appellees.**

Nos. 86–6144, 86–6057.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1986.

Submission Withdrawn Feb. 19, 1987.

Resubmitted Aug. 20, 1987.

Decided Nov. 12, 1987.

---

Robert S. Warren and Claire D. Johnson, Los Angeles, Cal., for appellees.

William S. Leach, San Diego, Cal., for appellants.

Before HUG, FLETCHER and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

## OVERVIEW

A. Jacques Lou (Lou) appeals the district court's denial of Lou's motion to remand, the granting of a motion to transfer the action to the Southern District of New York, and the enjoining of a similar state court proceeding. The district court found that Lou improperly pled a section 17(a) violation of the 1933 Securities Act and that the Racketeer Influenced and Corrupt Organizations Act (RICO) claims, 18 U.S.C. §§ 1961–68, and the section 17(a) claims were "separate and independent," thus affording the court removal jurisdiction pursuant to 28 U.S.C. § 1441(c). We affirm the district court on these issues, but for different reasons. We reverse, however, the district court's preliminary injunction of the state court action. In resolving this appeal we hold that state and federal courts have concurrent jurisdiction over RICO claims, but we do not address the sufficiency of Lou's section 17(a) pleadings, or whether the RICO claims and the section 17(a) claims are separate and independent.

## FACTS

Lou filed a shareholders' derivative action on behalf of Ashland Oil Company, Inc. (Ashland), a Kentucky corporation, and a class action on behalf of all persons who owned Ashland common stock on April 1, 1986, except members of the Belzberg family and certain entities controlled or used by them, Drexel Burnham Lambert Inc., an investment banking firm which assisted the Belzbergs, and the Ashland directors. Lou alleges that she and a number of other Ashland shareholders were damaged by the wrongful acts of the Belzbergs.

During the early part of 1986, the Belzbergs accumulated several million shares of Ashland common stock. Ashland publicly reported the acquisition of eight to nine percent of Ashland stock on March 25, 1986. The next day, the Belzbergs disclosed that they owned 9.2% of Ashland stock and offered to buy the remaining outstanding shares. As a consequence of these actions, the price of Ashland stock increased. On April 1, 1986, Ashland announced that it had agreed to repurchase 2.6 million shares of Ashland stock from the Belzbergs. This caused the price of the stock to fall. The Belzberg family realized a substantial profit from the transaction.

Lou filed her complaint in Los Angeles Superior Court alleging violations of state law fiduciary obligations, section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982), and the RICO statute, 18 U.S.C. §§ 1961–68 (1982 & Supp. III 1985). Under the authority of *Heckmann v. Ahmanson*, 168 Cal.App.3d 119, 214 Cal.Rptr. 177 (1985), Lou sought a temporary restraining order, expedited discovery, and a constructive trust on the Belzbergs' "greenmail" profit from the Ashland stock sale.

On April 17, 1986, defendants removed the action to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1441(a) and (c) (1982). Lou sought to remand the action to state court while defendants moved to transfer the matter to the Southern District of New York. The district court denied the motion to remand on two grounds. First, although section 17(a) claims brought in state court are generally not removable, *see* 15 U.S.C. § 77v(a) (1982), the district court found that Lou's pleadings did not adequately allege a section 17(a) violation. Thus removal was permissible under 28 U.S.C. § 1441(a) based on the federal RICO claim. Second, the district court determined that Lou's RICO claims were "sepa-

rate and independent" from her other claims, making her action removable under 28 U.S.C. § 1441(c). The district court then ordered transfer of the action to New York in the interests of justice and for the convenience of the parties and witnesses.

On May 27, 1986, Pauline Mickler, an Ashland shareholder represented by the same attorneys as Lou and two additional law firms, instituted a similar action in state court against the Belzbergs and several new defendants. The complaint asserted additional state law claims and omitted the federal claims. *Mickler v. Belzberg*, No. CA000983, Los Angeles County Super. Ct. (*Mickler*). The next day the district court granted the *Lou* defendants a temporary restraining order, enjoining the prosecution of the *Mickler* action. The court also sent the *Lou* record to the District Court for the Southern District of New York on May 28.

On June 3, 1986, the United States District Court for the Central District of California issued a preliminary injunction against prosecution of the *Mickler* action and simultaneously denied Lou's motion to stay the transfer pending appellate review of the district court's denial of remand, issuance of the injunction, and transfer of the case to New York. Lou filed her notice of appeal on June 12, 1986. On July 7, 1986, the transferred records were docketed in the Office of the Clerk of the Southern District of New York.

## DISCUSSION

### Appellate Jurisdiction

We have jurisdiction to review this case under 28 U.S.C. § 1292(a)(1) (1982), which allows appeals from the grant or denial of a preliminary injunction. *Genosick v. Richmond Unified School Dist.*, 479 F.2d 482, 482–83 (9th Cir.1973). In an appeal from a preliminary injunction, we will also review a denial of a motion to remand, *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir.1985) (citing *Albi v. Street & Smith Publications, Inc.*, 140 F.2d 310, 311 (9th Cir.1944)), and a transfer order made under 28 U.S.C. § 1404(a) (1982), *United States Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir.1982).

The Belzbergs contend, however, that because the case was transferred to the Southern District of New York, this court lacks appellate jurisdiction. We have not yet established a rule determining when a transfer under 28 U.S.C. § 1404(a) becomes effective, thus terminating our jurisdiction. Section 1404(a) provides for the transfer of an action to another district for the convenience of parties and witnesses, in the interest of justice. Other circuits have held that a section 1404 transfer ends the jurisdiction of both the transferor court and the corresponding appellate court when the motion is granted and the papers are entered in the transferee court's records. *See In re Sosa*, 712 F.2d 1479, 1480 (D.C.Cir.1983); *In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir.1982); *Starnes v. McGuire*, 512 F.2d 918, 924, 935 (D.C.Cir. 1974) (en banc); *In re Southwestern Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963); *Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir.1957). We adopt the docketing date as the time of effective transfer.

As Lou filed her appeal on June 12, 1986, before the papers were docketed in New York, this court had already acquired appellate jurisdiction before the transfer was effective. Once jurisdiction is properly obtained by the appellate court it is not terminated by the subsequent completion of a section 1404 transfer. *See Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 869 (2d Cir.1950).

### Standard of Review

The primary basis for our jurisdiction is review of the preliminary injunction under 28 U.S.C. § 1292(a) (1982). A district court's order regarding preliminary injunctive relief is subject to limited review. The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir.1985);

*Bank of America Nat'l Trust & Sav. Ass'n v. Summerland County Water Dist.*, 767 F.2d 544, 547–48 (9th Cir.1985). If the case was not properly removed to the federal court it would be an abuse of discretion to enjoin prosecution of a similar state case. Removal of a case from state to federal court is a question of federal subject matter jurisdiction, which is reviewed de novo. *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 930 (9th Cir. 1986) (citing *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 768 (9th Cir.1986)), *aff'd,* —— U.S. ——, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Once a case is removed, federal law rather than state law governs the future course of the proceedings. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 437, 94 S.Ct. 1113, 1123, 39 L.Ed.2d 435 (1974); *Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74, 79 (9th Cir.1979).

The district court's decision transferring venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) is reviewed for an abuse of discretion. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir.) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981)), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979).

## Motion to Remand

The original issue presented to us was whether Lou adequately pled a nonremovable section 17(a) Securities Act claim and if so, whether the RICO claims were "separate and independent," thereby permitting removal of the action, including the section 17(a) claim, under 28 U.S.C. § 1441(c). Section 17(a) makes it unlawful for any person offering or selling securities through means of interstate commerce to employ any device, scheme, or artifice to defraud. 15 U.S.C. § 77q(a)(1). Section 22(a) of the 1933 Securities Act expressly forbids removal of claims under any of the sections of that Act that are brought in state courts of competent jurisdiction. 15 U.S.C. § 77v(a). The district court denied Lou's motion to remand, specifically holding that Lou failed to allege she was a purchaser or seller of securities during the critical period in question as required by *Mosher v. Kane*, 784 F.2d 1385, 1390–91 (9th Cir.1986).

After the filing of this appeal, we decided *Puchall v. Houghton, Cluck, Coughlin & Riley (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 823 F.2d 1349 (9th Cir.1987) (en banc). In *Puchall*, we held that no private right of action exists under section 17(a) of the Securities Act of 1933. Because Lou has *no* section 17(a) cause of action in the first instance, we need not address the adequacy of her pleading. In the wake of *Puchall*, there is no statutory restriction on removing the action to federal court other than complying with the removal statute. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Lou, in alleging a private civil RICO cause of action under 18 U.S.C. § 1964(c), clearly asserted a claim within the original jurisdiction of a United States district court. This does not, however, end our analysis on the propriety of the removal. We still need to address a potential bar to removal raised by the derivative jurisdiction doctrine.

### 1) Derivative Jurisdiction

The derivative jurisdiction doctrine, which applies to cases filed before June 20, 1986, provides that a federal district court lacks subject matter jurisdiction over claims removed from a state court if the state court lacked subject matter jurisdiction over the claims.[1] *See Clorox Co. v.*

1. We note that the doctrine of derivative jurisdiction was modified by amendment to 28 U.S.C. § 1441 effective June 19, 1986. A new subsection was added:

(e) The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil

*United States Dist. Court,* 779 F.2d 517, 522 (9th Cir.1985); *Dyer v. Greif Bros., Inc.,* 766 F.2d 398, 399–400 (9th Cir.1985). If RICO jurisdiction is exclusively federal, the California state court was without subject matter jurisdiction over that cause of action. Thus, under the derivative jurisdiction doctrine, the district court also lacked jurisdiction over Lou's RICO claim, and must dismiss the claim without prejudice.[2] *See Franchise Tax Bd. v. Laborers Vacation Trust,* 463 U.S. 1, 24 n. 27, 103 S.Ct. 2841, 2854 n. 27, 77 L.Ed.2d 420; *Clorox,* 779 F.2d at 522; *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654, 658 (9th Cir.1972); *see also Lambert Run Coal Co. v. Baltimore & O.R.R.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922); *Dyer,* 766 F.2d at 400. On the other hand, if state and federal courts have concurrent jurisdiction over RICO claims, we may address the propriety of the removal of this action from the California state court, the subsequent sec-

tion 1404 transfer, and the appropriateness of the district court's preliminary injunction order.

*2) RICO Jurisdiction*

Whether jurisdiction over RICO claims is exclusively federal or shared concurrently with the states has been much debated in state courts and federal district courts without uniform results.[3] Neither this court nor any other federal appellate court has confronted the issue of whether RICO claims may be brought in state courts, and there are persuasive arguments both for and against concurrent jurisdiction. We believe, however, that the stronger arguments favor concurrent jurisdiction.

We begin with the presumption that state courts have subject matter jurisdiction over cases arising under federal laws. *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981). This presumption can be rebutted in three ways: "by an

---

action is removed did not have jurisdiction over that claim.
Pub.L. No. 99–336, § 3(a), 100 Stat. 637 (1986). The amendment, however, applies only to claims in civil actions commenced in state courts on or after June 19, 1986. *Id.* § 3(b). The state court actions involved in this case were commenced prior to that date, so the derivative jurisdiction doctrine applies here.

2. This court has described the derivative jurisdiction doctrine as:
    the kind of legal *tour de force* that most laymen cannot understand, particularly in a case where the federal court not only has subject matter jurisdiction, but has exclusive subject matter jurisdiction. One would have thought that the purpose of removal in such a case is to get the case out of the court that lacks jurisdiction to hear it and into the court that has jurisdiction....
    *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654, 658–59 (9th Cir. 1972). Congress apparently could not understand the purpose of the doctrine either. *See supra* note 1.

3. For decisions finding concurrent jurisdiction, see *Brandenberg v. First Md. Sav. & Loan,* 660 F.Supp. 717, 730–34 (D.Md.1987); *Contemporary Servs. Corp. v. Universal City Studios,* 655 F.Supp. 885, 893 (C.D.Cal.1987); *Village Improvement Ass'n v. Dow Chem. Co.,* 655 F.Supp. 311, 313 (E.D.Pa.1987); *Carman v. First Nat'l Bank,* 642 F.Supp. 862, 864 (W.D.Ky.1986); *HMK Corp. v. Walsey,* 637 F.Supp. 710, 717 (E.D.Va.1986), *aff'd on other grounds,* 828 F.2d

1071 (4th Cir.1987); *Karel v. Kroner,* 635 F.Supp. 725, 731 (N.D.Ill.1986); *Chas. Kurz Co. v. Lombardi,* 595 F.Supp. 373, 381 n. 11 (E.D.Pa. 1984); *Luebke v. Marine Nat'l Bank,* 567 F.Supp. 1460, 1462 (E.D.Wis.1983); *Cianci v. Superior Court,* 40 Cal.3d 903, 916, 710 P.2d 375, 382, 221 Cal.Rptr. 575, 581–82 (1985); *cf. County of Cook v. MidCon Corp.,* 773 F.2d 892, 905 n. 4 (7th Cir.1985) (doubting the reasoning of courts finding exclusive jurisdiction); *Matek v. Murat,* 638 F.Supp. 775, 783 n. 6 (C.D.Cal.1986) (noting *Cianci* with apparent approval).

For cases finding exclusive federal jurisdiction, *see Intel Corp. v. Hartford Accident & Indem. Co.,* 662 F.Supp. 1507, 1509–12 (N.D.Cal. 1987); *Spence v. Flynt,* 647 F.Supp. 1266, 1270 (D.Wyo.1986); *Broadway v. San Antonio Shoe, Inc.,* 643 F.Supp. 584, 587 (S.D.Tex.1986); *Massey v. City of Oklahoma City,* 643 F.Supp. 81, 84 (W.D.Okla.1986); *Kinsey v. Nestor Exploration Ltd.–1981A,* 604 F.Supp. 1365, 1370–71 (E.D. Wash.1985); *Levinson v. American Accident Reins. Group,* 503 A.2d 632, 635 (Del.Ch.1985); *Thrall Car Mfg. Co. v. Lindquist,* 145 Ill.App.3d 712, 718, 99 Ill.Dec. 397, 401, 495 N.E.2d 1132, 1136 (1986); *Maplewood Bank & Trust Co. v. Acorn, Inc.,* 207 N.J.Super. 590, 594, 504 A.2d 819, 821 (1985); *Belfont Sales Corp. v. Gruen Indus. Inc.,* 112 A.D.2d 96, 100, 491 N.Y.S.2d 652, 655 (N.Y.App.Div.1985); *Greenview Trading Co. v. Hershman & Leicher,* 108 A.D.2d 468, 473, 489 N.Y.S.2d 502, 506 (N.Y.App.Div.1985); *Main Rusk Assocs. v. Interior Space Constructors, Inc.,* 699 S.W.2d 305, 307 (Tex.Ct.App. 1985).

explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.* at 478, 101 S.Ct. at 2875. We examine each of the three in turn.

a) *Explicit Statutory Directive*

Section 1964(c) of RICO creates the private cause of action:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (1982). We cannot read the word "exclusive" into section 1964's grant of federal jurisdiction over private RICO suits. Rather, "[i]t is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore Co.*, 453 U.S. at 479, 101 S.Ct. at 2875–76; *see also Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 506, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962). Thus we find no explicit statutory directive serving to rebut the presumption of concurrent jurisdiction. *See Contemporary Servs. Corp. v. Universal City Studios*, 655 F.Supp. 885, 893 (C.D.Cal.1987).

b) *Unmistakable Implication from the Legislative History*

The legislative history provides "no evidence that Congress ever expressly considered the question of jurisdiction; indeed,

the evidence establishes that its attention was focused solely on whether to provide a private right of action." *Cianci v. Superior Court*, 40 Cal.3d 903, 912, 710 P.2d 375, 379, 221 Cal.Rptr. 575, 579 (1985); *see also Contemporary Servs. Corp.*, 655 F.Supp. at 893. The principal draftsman of RICO, while believing that jurisdiction should not be concurrent, agrees that Congress did not expressly consider the issue; indeed, as far as he knows, " 'no one even thought of the issue.' " Flaherty, *Two States Lay Claim to RICO*, Nat'l Law J., May 7, 1984, at 3, col. 1 (quoting Professor G. Robert Blakey).[4]

While conceding that RICO's explicit legislative history offers nothing to negate the presumption of concurrent jurisdiction, proponents of exclusive jurisdiction argue that such jurisdiction should be implied because section 1964(c) was consciously modeled after section 4 of the Clayton Act, 15 U.S.C. § 15,[5] which has been judicially construed to require exclusive federal jurisdiction. *See County of Cook v. MidCon Corp.*, 574 F.Supp. 902, 912 (N.D.Ill.1983), *aff'd*, 773 F.2d 892 (7th Cir.1985); *Greenview Trading Co. v. Hershman & Leicher*, 108 A.D.2d 468, 471, 489 N.Y.S.2d 502, 504 (N.Y.App.Div.1985). In *County of Cook*, the district court held that RICO jurisdiction was exclusively federal because "[l]egislators must have known" that section 4 of the Clayton Act gives federal courts exclusive jurisdiction and it would therefore "be anomalous ... to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction." 574 F.Supp. at 912.

---

**4.** The draftsman, Professor G. Robert Blakey, argues that had Congress considered the matter, " 'they would have made [jurisdiction] exclusive.' " Flaherty, *Two States Lay Claim to RICO*, Nat'l Law J., May 7, 1984, at 3, col. 2 (quoting Professor Blakey). In support of his assertion, Blakey points to the exclusive-jurisdiction antitrust statute on which section 1964(c) was modeled and to the fact that many RICO predicate offenses are derived from federal statutes over which the federal courts have exclusive jurisdiction. *Id.* The important fact, however, is that Congress did *not* consider the question of RICO jurisdiction, and we are not at liberty to amend a statute so as to provide for circumstances that

Congress has overlooked. Furthermore, we are not persuaded that an inference of exclusive jurisdiction may be drawn based on the factors suggested by Professor Blakey. *See* discussion *infra* at 12–17.

**5.** At the time of RICO's enactment, section 4, provided that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages by him sustained...." 15 U.S.C. § 15 (1964 & Supp. V 1965–1969).

In reviewing the *County of Cook* decision, the Seventh Circuit found the district court's analysis unconvincing. Although finding it unnecessary to reach the issue of RICO jurisdiction, the court stated:

We doubt whether the analogy to antitrust law is sufficiently strong to conclude that because jurisdiction over antitrust cases is exclusively federal, RICO jurisdiction necessarily must follow suit. Particularly in light of the normal presumption that state courts share concurrent jurisdiction over federal statutes, we would be reluctant to conclude from congressional silence that Congress intended to depart from the usual rule.

773 F.2d at 905 n. 4.

We agree with the Seventh Circuit that the patterning of RICO's section 1964(c) on section 4 of the Clayton Act does not create an "unmistakable implication" of congressional intent to confer exclusive jurisdiction. First, in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 485, 498–99, 105 S.Ct. 3275, 3279, 3286–87, 87 L.Ed.2d 346 (1985), the Supreme Court rejected the argument that the relationship between section 1964(c) and section 4 warranted the application of Clayton Act requirements to section 1964(c).[6] Although *Sedima* involved standing under RICO, not jurisdiction, we take the Supreme Court's holding as a recognition that Congress' mere borrowing of statutory language does not imply that Congress also intended to incorporate all of the baggage that may be attached to the borrowed language. Thus, we are not convinced that, in using the Clayton Act as a model, the legislators must have known that Clayton Act jurisdiction was exclusively federal and that they intended the same exclusivity for RICO.

Second, Congress has mandated that "[t]he provisions of [RICO] shall be liberally construed to effectuate its remedial pur-

poses." Pub.L. No. 91–452, § 904(a), 84 Stat. 941, 947 (1970). The Supreme Court has found that "if Congress' liberal-construction mandate is to be applied anywhere, it is in § 1964, where RICO's remedial purposes are most evident." *Sedima*, 473 U.S. at 492 n. 10, 105 S.Ct. at 3283 n. 10. These remedial purposes would be hindered if private RICO claims were barred from state courts. Under such circumstances, victims of RICO violations could not assert RICO claims that otherwise would have been joined with state law claims in state court. We therefore agree with the California Supreme Court that the requirement of liberal construction "strongly counsel[s] us not to read the obstacle of exclusive jurisdiction into section 1964(c) on the sole basis of its similarity to section 4 of the Clayton Act." *Cianci*, 40 Cal.3d at 913, 710 P.2d at 379, 221 Cal.Rptr. at 579.

We conclude that RICO's legislative history does not provide the requisite "unmistakable implication" that exclusive jurisdiction was intended. *See Gulf Offshore Co.*, 453 U.S. at 478, 101 S.Ct. at 2875, *see also HMK Corp. v. Walsey*, 637 F.Supp. 710, 717 (E.D.Va.1986) (finding that Congress patterned RICO after the Clayton Act "simply to encourage enforcement of RICO by private citizens" and that because "RICO differs greatly from federal antitrust, the need for exclusive federal jurisdiction under the antitrust statutes cannot justify a similar result under RICO"), *aff'd on other grounds*, 828 F.2d 1071 (4th Cir. 1987).

c) *Clear Incompatibility Between State Court Jurisdiction and Federal Interests.*

In *Kinsey v. Nestor Exploration Ltd.-1981A*, 604 F.Supp. 1365, 1370–71, (E.D. Wash.1985), the court held RICO jurisdiction to be exclusively federal because sections of the RICO statute other than sec-

---

6. In *Sedima*, the Second Circuit:
   [a]nalogizing to the Clayton Act, which had been the model for § 1964(c), ... concluded that just as an antitrust plaintiff must allege an "antitrust injury," so a RICO plaintiff must allege a "racketeering injury"—an injury "different in kind from that occurring as a result of the predicate acts themselves...."

473 U.S. at 485, 105 S.Ct. at 3279 (quoting 741 F.2d 482, 496 (2d Cir.1984)). The Supreme Court reversed, stating that "[i]n borrowing its 'racketeering injury' requirement from antitrust standing principles, the court below created exactly the problems Congress sought to avoid." *Id.* at 498–99, 105 S.Ct. at 3286–87.

tion 1964(c) are tied to federal laws and federal enforcement. The *Kinsey* court did "not believe it appropriate to dissect a statutory scheme, select one narrow provision thereof, and determine with respect to that one provision at least, congressional silence is the equivalent of an affirmative grant of jurisdiction." *Id.* There are three problems with this analysis. First, jurisdiction does not require an affirmative grant; rather, jurisdiction is presumptively concurrent absent factors rebutting the presumption. *Gulf Offshore Co.,* 453 U.S. at 477–78, 101 S.Ct. at 2874–75. Second, RICO is not tied solely to federal laws. The *Kinsey* court correctly noted that section 1961 defines the "predicate acts" necessary to make out a RICO violation in terms of federal law. 604 F.Supp. at 1370; 18 U.S.C. § 1961(1)(B)–(D) (1982 & Supp. III 1985). However, it failed to mention that section 1961 also provides that violations of state criminal laws serve as RICO predicate acts, thereby incorporating state as well as federal law into RICO. 18 U.S.C. § 1961(1)(A) (1982 & Supp. III 1985).

Third, while much of the RICO statute concerns criminal and civil enforcement by federal officials, we disagree with the *Kinsey* court that private enforcement actions, under section 1964(c), must therefore be heard only in federal courts. As discussed above, *see supra* at 736, the Supreme Court in *Sedima* declined to read federal antitrust requirements into RICO; however, the Court thought Congress' reliance on the Clayton Act, "under which private and governmental actions are entirely distinct," was relevant in interpreting section 1964(c). 473 U.S. at 489, 105 S.Ct. at 3282. If private and government actions under RICO are "entirely distinct,"[7] there is no reason to read the federalized aspects of the statute into section 1964(c). Thus, we do not find that the internal structure of RICO creates a "clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co.,* 453 U.S. at 478, 101 S.Ct. at 2875.

Nor do we find that federal interests will be jeopardized by state-court adjudication of private RICO claims. The only strong argument supporting an incompatibility between state and federal jurisdiction is that federal courts have exclusive jurisdiction over several RICO predicate acts. *See HMK Corp.,* 637 F.Supp. at 717. We agree with *HMK Corp.* that this fact is insufficient to rebut the presumption of concurrent jurisdiction:

> First, in adjudicating a RICO case, state courts only need determine whether the alleged predicate acts did or did not occur. This type of factual finding is unlikely to involve any complex interpretation of the underlying federal statutes, which would require exclusive jurisdiction. Second, as a practical matter, state courts are unlikely to find themselves in the position of interpreting and applying the underlying federal statutes. The vast majority of RICO cases involve garden variety state law fraud, where the plaintiff has simply seized upon RICO to obtain federal jurisdiction, treble damages, and attorney fees. If anything, RICO involves federal courts in the adjudication of state law claims, rather than the other way around.

*Id.; see also Cianci,* 40 Cal.3d at 915, 710 P.2d at 381, 221 Cal.Rptr. at 581 (finding that federal judges do not necessarily have superior expertise over RICO claims because the RICO predicate acts include state and federal violations and, "[w]hile federal judges must be presumed to have greater expertise over the latter, state judges must be presumed to have greater expertise over the [former]").

█ In sum, we find none of the factors necessary to rebut the presumption of concurrent jurisdiction of section 1964(c) claims. Our conclusion is strengthened by the requirement that we afford a liberal construction to RICO generally, Pub.L. No. 91–452, § 904(a), 84 Stat. at 947, and to section 1964(c) in particular. *Sedima,* 473 U.S. at 492 n. 10, 105 S.Ct. at 3283 n. 10. Providing a private plaintiff with a choice

---

7. It, of course, makes perfect sense that a federal statute should provide for *governmental* enforcement only by federal officials and describe such enforcement in terms of federal courts. This fact tells us nothing, however, about the scope of private enforcement.

of fora encourage enforcement of RICO and preserves an appropriate role for state courts in cases involving essentially state law. We are convinced that the purposes behind the grant of a private right of action are best served by concurrent jurisdiction. *See id.* at 493, 105 S.Ct. at 3284 ("Private attorney general provisions such as § 1964(c) are in part designed to fill prosecutorial gaps.").

Our holding of concurrent jurisdiction over RICO claims disposes of any barrier erected by the derivative jurisdiction doctrine. The district court denied Lou's motion to remand for reasons that have become irrelevant in light of *Puchall.* We may, however, affirm the district court's decision on any ground finding support in the record. *See Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986); *Bruce v. United States,* 759 F.2d 755, 758 (9th Cir.1985). Accordingly, we hold that the district court correctly denied the motion to remand.

### Appeal of the Motion to Transfer

Lou argues that the district court abused its discretion by transferring this action without due regard to Lou's choice of forum. The district court transferred Lou's action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Although great weight is generally accorded plaintiff's choice of forum, *Texas Eastern Transmission Corp. v. Marine Office–Appleton & Cox Corp.,* 579 F.2d 561, 567 (10th Cir.1978), when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight. *Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 58 (E.D.N.Y.1979); *Stolz v. Barker,* 466 F.Supp. 24, 27 (M.D.N.C.1978). In judging the weight to be accorded Lou's choice of forum, consideration must be given to the extent of both Lou's and the Belzbergs' contacts with the forum, including those relating to Lou's cause of action. *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir.1968). If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, Lou's choice is entitled to only minimal consideration. *Id.*

After an exhaustive review of the record the district court concluded that: (1) the stock purchase agreement was negotiated and executed in New York, (2) the majority of the witnesses live and work in the New York area where they are subject to subpoena, (3) all the defendants are subject to personal jurisdiction in New York, and (4) the costs of litigation would be drastically reduced if the case were heard in New York. Based on these factors, we find that the district court did not abuse its discretion in deciding to transfer this action pursuant to 28 U.S.C. § 1404(a).

### Preliminary Injunction

As a final matter, we must determine whether the district court properly enjoined the *Mickler* state court proceedings. The Anti-Injunction Act, 28 U.S.C. § 2283 (1982), provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Belzbergs argue that the district court appropriately granted injunctive relief under the "necessary in aid of its jurisdiction" exception and the "expressly authorized" exception. 28 U.S.C. § 2283. We disagree. We note that the exceptions to the Anti–Injunction Act must be construed narrowly and doubts as to the propriety of a federal injunction against a state court proceeding should be resolved in favor of permitting the state action to proceed. *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (plurality opinion); *Alton Box Bd. Co. v. Esprit De Corp.,* 682 F.2d 1267, 1271 (9th Cir.1982). Unless one of the statutory exceptions applies, a federal injunction restraining prosecution of a lawsuit in state

court is absolutely prohibited. *Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 2154–56, 32 L.Ed.2d 705 (1972). *See also Alton Box*, 682 F.2d at 1271.

### 1) *"Necessary in Aid of Its Jurisdiction" Exception*

■ The general rule under the "necessary in aid of its jurisdiction" exception is that where state and federal courts have concurrent jurisdiction over a case, neither court may prevent the parties from simultaneously pursuing claims in both courts. *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). "Necessary in aid of" is "similar to the concept of injunctions to 'protect or effectuate' judgments." *Id.* Neither exception applies unless injunctive relief is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* The mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the "necessary in aid of" exception. *See Alton Box*, 682 F.2d at 1272–73. Accordingly, this exception is not applicable here. The cases cited by the Belzbergs in support of their position are inapposite because they involve injunctions obtained after final judgments or in situations where the state proceedings would impair seriously pending settlements in the federal actions.

### 2) *"Expressly Authorized" Exception*

Title 28 U.S.C. § 1446(e) (1982) provides that upon removal to federal court, "the State court shall proceed no further unless and until the case is remanded." This prohibition has been construed as an express congressional authorization to enjoin or stay the state court proceedings. In fact, this injunctive power was established long before the "expressly authorized" exception to the Anti-Injunction Act was added in 1948.

Justice Stewart discussed the anti-injunction statute in *Mitchum v. Foster*, 407 U.S. at 234, 92 S.Ct. at 2157–58:

in addition to the bankruptcy law exception that Congress explicitly recognized in 1874, the Court through the years found that federal courts were empowered to enjoin state court proceedings, despite the anti-injunction statute, in carrying out the will of Congress under at least six other federal laws. These covered a broad spectrum of congressional action: (1) legislation providing for removal of litigation from state to federal courts,[12] ....

[12] See *French v. Hay*, 22 Wall. (89 U.S.) 250, 22 L.Ed. 857 [1875]; *Kline v. Burke Construction Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 [1922]. The federal removal provisions, both civil and criminal, 28 U.S.C. §§ 1441–1450, provide that once a copy of the removal petition is filed with the clerk of the state court, the "State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(e).

More recently, in *Vendo Co.*, Justice Rehnquist, writing for the plurality, cited 28 U.S.C. § 1446(e) as an example of a statute that, while not directly referring to 28 U.S.C. § 2283, nonetheless *explicitly authorized* injunctive relief against state court proceedings. 433 U.S. at 640, 97 S.Ct. at 2892.

■ It is thus clear that a federal court may enjoin the continued prosecution of the same case in state court after its removal. A more difficult problem is presented when a new action is filed in state court. In a case decided prior to the 1948 amendment to the Anti-Injunction Act, *Honolulu Oil Corp. v. Patrick*, 71 F.2d 654 (9th Cir. 1934), we approved the denial of an injunction against a second action filed in state court after removal of a prior suit. The new suit reduced the claim below the amount required for removal and joined two non-diverse defendants. We need not decide whether, under its particular facts, *Honolulu Oil Corp.* remains viable, because we conclude that in any event, the injunction against the *Mickler* suit was improvidently granted.

The Belzbergs cite Fifth Circuit authority to support their contention that an in-

junction is expressly authorized by 28 U.S.C. § 1446(e). *Frith v. Blazon–Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir.1975) (per curiam). *Frith*, however, vacated an injunction prohibiting the plaintiff from prosecuting his state court action. Rather than supporting Belzberg, *Frith* holds that "where no fraud is found, the second action brought in state court should not be enjoined." *Id. See Jett v. Zink*, 474 F.2d 149 (5th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973); *Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). The court did state that "where a district court finds that a second suit filed in state court is an attempt to subvert the purposes of the removal statute, it is justified and authorized by § 1446(e) in enjoining the proceedings in the state court." 512 F.2d at 901. It would be of little value to enjoin continuance of a state case after removal and then permit the refiling of essentially the same suit in state court. We agree with the Fifth Circuit that where a second state court suit is fraudulently filed in an attempt to subvert the removal of a prior case, a federal court may enter an injunction.

The district court in the case before us made no finding that the second state court action was fraudulent or an attempt to subvert the purposes of the removal statute. We believe that such a finding would be clearly erroneous. The *Mickler* case involves different plaintiffs, additional counsel, additional defendants, and only state claims. We conclude that under these circumstances the preliminary injunction was not authorized by section 1446(e).

Because the preliminary injunction does not fall under any exception to 28 U.S.C. § 2283, the "anti-injunction law absolutely prohibits ... all federal equitable intervention in a pending state court proceeding...." *Mitchum*, 407 U.S. at 229, 92 S.Ct. at 2155.

## CONCLUSION

We hold that state courts have concurrent jurisdiction over RICO causes of action under 18 U.S.C. § 1964(c). As such, the derivative jurisdiction doctrine does not prevent the removal of Lou's action to federal court. We affirm the district court's denial of Lou's motion to remand. Further, we affirm the district court's section 1404 transfer of the case to New York. We reverse, however, the district court's granting of a preliminary injunction against Mickler's state court action as it does not fall under any exception to the Anti–Injunction Act.

Each party shall bear its own costs.

AFFIRMED in part, REVERSED in part, and REMANDED.