## Case No. 1,871.

### BRIGGS v. FRENCH.

[2 Summ. 251.][1]

Circuit Court, D. Massachusetts    Oct. Term, 1835.

FRAUDULENT CONVEYANCE — COLLUSIVE ATTACHMENT—DEED — SUFFICIENCY — PRESUMPTION OF VALIDITY —FEDERAL COURTS — CONVEYANCE TO ENABLE MAINTENANCE OF SUIT — REMOVAL TO PROSECUTE SUIT.

1. A conveyance had been made of certain lands, on the 7th of May, 1829. Before it could be properly recorded, the defendant attached these lands, to secure a note signed by the grantors, on the 8th of May, 1829, the day following the execution of the conveyance, and payable in thirty days, but which was antedated, as of the 3d April preceding, being the time when the goods, which formed the consideration of it, had been sold on a credit of six months. *Held*, that the ante-dating the note, and creating a present debt, on which the attachment of the lands was made, was a fraud upon the grantees, and did not disturb their rights under the conveyance, whatever might be the validity of the proceeding, as between the parties.

[See Goodenough v. Warren, Case No. 5,534; Shults v. Moore, Id. 12,824.]

2. A conveyance, which purports to be bona fide, and for a valuable consideration, will be taken to be so, until the contrary is shown.

3. A conveyance made by a citizen of one state, to a citizen of another state, for the purpose of enabling the latter to maintain a suit on it in a court of the United States, vests a legal title as between the parties; and a stranger, not claiming under either of the parties, has no right to inquire into the motive of the conveyance. Quaere, if the grantee would hold his title subject to the equities it had in the hands of the grantor.

[Cited in Nesmith v. Calvert, Case No. 10,123; Smith v. Kernochen, 7 How. (48 U. S.) 216; Osborne v. Brooklyn City R. Co., Case No. 10,597; Johnson v. Monell, Id. 7,399; De Laveaga v. Williams, Id. 3,759; Blackburn v. Selma, M. & M. R. Co., Id. 1,467; Marion v. Ellis, 10 Fed. 412.]

4. If a citizen removes from one state to another, in order to prosecute suits in the courts of the United States, provided the removal be real, the motive of the act cannot be inquired into.

[Cited in The Garland, 16 Fed. 288; Morris v. Gilmer, 129 U. S. 328, 9 Sup. Ct. 293.]

5. The judiciary act of 1789 [1 Stat. 79], c. 20, § 11, contains the following exception: "Nor shall any district or circuit court have cognizance of any suit, to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made, except in cases of bills of exchange." *Held* that this does not apply, either directly or constructively, to a conveyance of lands from a citizen of one state to a citizen of another state. Quaere, as to the authority of the cases, Maxwell's Lessee v. Levy, 2 Dall. [2 U. S.] 381, 4 Dall. [4 U. S.] 330, and Hurst's Lessee v. McNeil [Case No. 6,936].

[Cited in Dundas v. Bowler, Case No. 4,140; U. S. v. Canal Bank, Id. 14,715; Everett v. Stone, Id. 4,577.]

[See Newby v. Oregon Central R. Co., Case No. 10,145; Blackburn v. Selma, M. & M. R. Co., Id. 1,467; De Laveaga v. Williams, Id. 3,759; Bowne v. Arbuncle, Id. 1,742;

Smith v. Kernochen, 7 How. (48 U. S.) 198; Barney v. Baltimore, Case No. 1,029; Lanning v. Lockett, 10 Fed. 451; Hawley v. Kepp, Case No. 6,249; Maxwell's Lessee v. Levy, 2 Dall. (2 U. S.) 381.]

6. Quaere, if an attachment by a creditor will overreach the title of a prior grantee from the debtor, unless he has been guilty of laches, in recording his deed? If he records it within a reasonable time, can it be defeated by an intermediate attachment?

7. Quaere. Where a conveyance is made by one partner of his separate property to his private creditor, can a creditor of the firm, by an attachment laid before the deed of conveyance is recorded, defeat the prior title of such private creditor? If he may at law, can he in equity?

8. Quaere, as to the effect, both in law and equity, of an attachment made after the execution of a bona fide conveyance and before recording of it.

Bill in equity [by William Briggs against Arthur French]. The bill set out a fraudulent attachment, and levy of the defendant, by a contrivance with his debtor, upon land sold by the latter to the plaintiff, situate in New Hampshire, before the deed of conveyance to the plaintiff was recorded, and charged the defendant with full notice of all the facts. The bill prayed, that the defendant might, by injunction, be restrained from selling or conveying the land; that the levy might be declared fraudulent; that the defendant might release his claim with warranty against all acts done by him; and that the plaintiff might be quieted in his present possession of the premises. A demurrer to the bill for want of equity was overruled at a former term. 1 Summ. 504 [Briggs v. French, Case No. 1,870]. At this term, the cause was heard on the bill and answer and proofs in the case. [Decree for plaintiff.] The material facts appear in the opinion of the court.

J. Mason, for plaintiff.
Aylwin, for defendant.

STORY, Circuit Justice, delivered the opinion of the court to the following effect. The defendant claims title to the land in controversy under a levy on an execution, duly issued on a judgment rendered after an attachment of the land upon mesne process. The title of the plaintiff is under a conveyance previously made by George A. Hodges to Jonathan Hodges and others, of the same land. The conveyance was made in Boston; and before it could be put on record in the registry of deeds for the county of Sullivan, in the state of New Hampshire (where the land lies,) although due diligence was used for this purpose, the defendant had made his attachment.

The first question is, whether the defendant had, at the time of making his attachment, notice of the conveyance of the same land so made to Jonathan Hodges and others. My opinion is, that the evidence establishes this fact beyond reasonable controversy. Although the defendant's answer

[1] [Reported by Charles Sumner, Esq.]

is evasive and unsatisfactory in its form, yet it admits enough of knowledge of the conveyance, to have put the party upon further inquiry. He knew the fact of an assignment having been made by G. A. Hodges, upon his failure, to Jonathan Hodges and others (the grantees) for the benefit of themselves and other creditors; and he actually summoned them as trustees in a trustee process, before he made any attachment. Now, that assignment conveyed these very lands. But, if it were doubtful upon the answer, the fact of actual notice of the conveyance is abundantly made out, by the whole current of the evidence, so strongly and so clearly, that it seems to me impossible to escape from it. But if this objection to the defendant's levy were not (as I think it is) absolutely insuperable, there is another fact equally decisive against it. It is, that, there was no debt actually due to the defendant at the time of the conveyance, upon which any suit could be maintained. The defendant had sold goods to G. A. Hodges and Company, on the third day of April, 1829, upon a credit of six months. The note, for these goods, upon which the suit was brought, and the attachment laid, was given on the 8th of May following, after the conveyance to Jonathan Hodges and others, was executed; and the note was ante-dated, as of the 3d of the preceding April, so as to give it the appearance of being contemporaneous with the sale of the goods. Now, whatever might be the validity of this proceeding between the parties, it is perfectly clear, that it could have no legal operation to disturb the rights of the grantees under the conveyance to them. It would be a fraud upon them to ante-date a note, and create a present debt to defeat the rights antecedently acquired by them under that conveyance. So that, in both views, the levy of the defendant must, as to these grantees, and all persons claiming under them, be treated as utterly void and inoperative. But it is said, that the conveyance was made to the present plaintiff solely with a view to give jurisdiction to this court, and if so, that it is utterly void, and the present bill must be dismissed. Prima facie, the conveyance must be taken to be, what it purports to be, a conveyance bona fide, and for a valuable consideration. And the burthen of proof is upon the defendant, who sets it up as a matter of defence, to establish the contrary fact, for which he contends. Now, there is a total absence of any such proof in the cause; and there is positive proof, that the conveyance to Lovel and Delano, under whom the plaintiff claims title, was for a full consideration. The defence then, fails for the want of any suitable proofs.

But I take this occasion to say, that I am by no means prepared to admit the doctrine, which this point of the defence supposes. I am yet to learn, that a conveyance made by a party to a citizen of another state, for the purpose of enabling the latter to maintain a suit on it in a court of the United States, is not in point of law operative to pass the legal title between the parties. I know of no law, that prohibits such a conveyance, or declares it inoperative. Nor do I well understand, how a mere stranger to the title, not claiming under either of the parties, has a right to inquire into the motive of such a conveyance. The most, it seems to me, that can arise from establishing a conveyance to be of this sort, is to throw back the plaintiff upon the same equities, which would have applied to the title in the hands of his grantor. But I cannot perceive, how it defeats the legal estate vested in him by the conveyance. He may hold the legal estate as trustee for the grantor; but, that does not affect the legal validity of the conveyance. Any man has a right to convey his estate in trust for himself, unless such trust be prohibited by law. I know of no such law applicable to a case of this sort. It is every day's practice for a citizen of one state to remove to another state, to become a citizen of the latter, in order to enable him to prosecute suits and assert interests in the courts of the United States. And, provided the removal be real and not merely nominal; and he has truly become a citizen of another state, I have never understood, that his motive for the act is inquirable into; or, if his motive is to prosecute a suit in the courts of the United States, that such a motive would defeat his right so to sue. It might be a circumstance to call in question the bona fides and reality of the removal or change of domicil. But if the new citizenship is really and truly acquired, his right to sue is a legitimate, constitutional and legal consequence, not to be impeached by the motive of his removal. But it is said, that such a conveyance is a fraud upon and an evasion of the laws of the United States. Of what laws? I know of no law of the United States, which declares such a conveyance void, or in the slightest manner alludes to it. The constitution declares, that the judicial power of the United States shall extend to "controversies" between citizens of different states. The moment such a conveyance is made, if the legal title passes, there does exist a "controversy" between the grantee, and any adverse claimant, who is a citizen of another state to which the terms apply. The judiciary act of 1789 [1 Stat. 79], c. 20, § 11, declares, that the circuit courts shall have jurisdiction, among other things, of "suits" between a citizen of the state, where the suit is brought, and a citizen of another state. Now, the present suit precisely answers that description. The plaintiff is bona fide a citizen of New Hampshire, and the defendant is bona fide a citizen of Massachusetts; and they have a "controversy" with each other founded upon adverse legal rights, and upon equities attached thereto. But it is said, that

the conveyance is an evasion of the laws of the United States, because, in the 11th section of the judiciary act of 1789, c. 20, there is an express exception in these words; "Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit 'might have been prosecuted in such court, to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange;" and that the present case falls within the equity of this exception. That is begging the whole question. The exception itself supposes, that, but for the provision, such notes and choses in action might have been sued by any assignee in the courts of the United States. It excepts, then, from the general words of the section such cases, and such cases only, as fall within the exception; leaving all others within the ordinary operation of the enacting clause. Now, the exception extends to promissory notes and choses in action. The present suit is not founded upon either. It is founded upon a conveyance of a title to land, good (as far as appears) by the lex loci situs. The laws of New Hampshire nowhere condemn, prohibit, or repudiate such a conveyance, either directly or constructively. The words, then, of the exception do not apply to the case. It is a case within the general descriptive words as to suitors, founding the jurisdiction of the circuit court. The section, not having prohibited all assignments, but only assignments of notes, and choses in action, by implication, leaves all other assignments operative. "Exceptio probat regulam." Congress might doubtless have prohibited the circuit courts from taking jurisdiction in cases of this sort, if they had chosen so to do. What they might do is one thing; what they have done is quite another. Until there is some act of congress shown, which prohibits a suit of this sort, between citizens of different states, I do not well see, how it is to be treated as an evasion of the laws of the United States, because other cases are prohibited. I know of no right of the courts of justice of the Union to create exceptions to their own jurisdiction, which the acts of congress have not created. We are not at liberty to extend exceptions beyond the ordinary reasonable meaning of the terms of a law, upon any rational equities, not included in these terms.

The case of Maxwell's Lessee v. Levy, 2 Dall. [2 U. S.] 381, and more fully reported in 4 Dall. [4 U. S.] 330, has been much pressed upon the court, as directly in point in support of this objection to the jurisdiction. It is so; but with the greatest deference to the learned judge (Mr. Justice Iredell) who decided that case, I am unable to accede to it. The reasoning in that case is wholly unsatisfactory to my mind. It assumes, throughout, the very matter in controversy; and I cannot but think it was founded in an extreme jealousy of the jurisdiction of the courts of the United States, and an extreme solicitude not to interfere with the state jurisdiction. It assumes, that there was no controversy between the parties before the court, (who were citizens of different states) because one party was a trustee of the land, upon a conveyance executed by the grantor, for his own benefit, and the special purpose of giving jurisdiction to the circuit court. It assumes, that such a conveyance is utterly void, or (to use the words of the learned judge) because "the law cannot, without absurdity, permit a man to create a trust for the purpose of defeating a solemn provision of its own." Certainly not. But then we must first see, that such a solemn provision of law is violated. Now, the constitution has no where defined, what shall be the nature of the "controversies," to which the right of suing in the courts of the United States shall attach. The words are general, and include all "controversies," of every nature between citizens of different states. The judiciary act of 1789, c. 20, § 11, is equally general. The section applies to all suits between the citizens of different states therein referred to, which suits are not within the exception. A controversy may exist between parties claiming adversely to each other, whether the title be legal or equitable, bona fide or mala fide. It is sufficient, if there be a title set up by one in opposition to the other. Nay, a controversy and a suit may exist between citizens of different states, where one party in the event may turn out not to have had any title at all, at the commencement of the suit. But this is not a question to the jurisdiction; but upon the merits of the controversy. The jurisdiction flows from the citizenship of the parties. The right to recover flows from the sufficiency of the title; and that is matter purposely to be discussed upon the trial of the merits. Take the very case then before the court. Suppose the defendant, in that suit, insisting upon his better right to the lands in controversy, had brought a suit in the circuit court at law or in equity, against the plaintiff, to set aside or defeat the title of the plaintiff under the conveyance from his grantor; would it for a moment be contended, that the plaintiff could—by setting up the objection, that the title under the conveyance to him was to found a jurisdiction in the courts of the United States, or that the conveyance was utterly void—defeat the suit so commenced against him in the circuit court? And if such an objection could not be maintainable in the converse case, what difference could it make, as a matter of "controversy" or "suit," to found jurisdiction, that the parties were reversed on the record? I confess that I do not well see. The case manifestly proceeded upon the supposition, that the right to maintain a suit in the courts of the United States does

not depend upon the citizenship of the parties; but upon the nature and validity of the titles, which they respectively assert in the suit. It appears to me, that such a doctrine is wholly unmaintainable. Besides; the case supposes, that the conveyance to the plaintiff, for the purpose of founding the jurisdiction, was utterly void at law. Now, this was a matter to be proved, and as yet I have seen no evidence, that by the principles of local law, or general jurisprudence, such a doctrine is established. And, if it were established, it would go to show, that the plaintiff had no merits to sustain his suit; but not, that the court had not jurisdiction to hear and decide upon the merits. There would still be a "controversy," and a "suit" between the parties, although the right might be altogether on one side. In the case of Hurst's Lessee v. McNeil [Case No. 6,936], the point arose incidentally upon the trial of the merits of the cause by a jury, and not upon any question to the jurisdiction. The court seem to have thought, that a deed executed, in order to give jurisdiction to the court, was a mere fictitious thing, not to be countenanced. But no reasons were given for this opinion; but a mere dry statement of it as law. With all deference to the great judge, who delivered that opinion, I cannot assent to that doctrine; and I should require some stringent authorities to support it. I have thrown out these suggestions, lest it should be supposed, that this court acquiesces in the doctrine of the cases in the Pennsylvania circuit court. Whenever the question shall be the turning point of a cause in this court, I, for one, shall deem it a very fit one for argument, upon original principles. See Harrington v. Long, 2 Mylne & K. 592, 593.

The view, which I have taken upon the foregoing points of notice, of the defendant's debt not being due, and of the conveyance to the plaintiff not being shown to be collusive, or designed to give jurisdiction to the court, renders it unnecessary to consider several other points, which are presented by the accompanying facts. In the first place, there is a very grave question presented, whether an attachment by a creditor can be permitted to overreach the title of a prior grantee from the debtor, unless he has been guilty of laches in recording his deed? If he records it as soon as he possibly or reasonably may; can it be defeated by the attachment of a creditor made in the intermediate time? In the next place, where a conveyance is made by one partner, of his separate property, to his own private creditor, can a mere creditor of the firm, by an attachment laid before the deed of conveyance is recorded, defeat the prior title of such private creditor? If he may at law, can he in equity, where, generally, the creditors of one partner are allowed a priority of payment out of his private property, and the creditors of the partnership a priority of payment out

of the partnership property? In the next place, can a creditor, in any case, by an attachment made after the execution of a bona fide conveyance by his debtor, of any real property, hold that property against the grantee, if the deed of conveyance is not recorded until after the attachment? Or does such creditor, by such an attachment, take only the interest. which the debtor himself could claim in such property? If the creditor could hold the property under such attachment and levy, at law, can he hold it in equity, against the grantee? These are questions, on which I give no opinion. The plaintiff is entitled to a decree in his favor, upon the merits, for a reconveyance of land taken under the levy, and to a perpetual injunction.

The decree was in the following terms:

This cause came on to be heard at this term upon the bill and answer, and the evidence in the case, and was argued by counsel. In consideration thereof it is ordered, adjudged, and decreed by the court, that the said levy on the land in the said Charlestown in the pleadings mentioned, being made with full notice of the title of the plaintiff in the bill mentioned, the title thereto is a fraud upon the plaintiff; and therefore is to be held utterly void; and the court do declare the same accordingly. And it is further ordered, adjudged, and decreed by the court, that the said defendant, his heirs and assigns, be perpetually enjoined not to set up or assert any title thereto against the said plaintiff, his heirs and assigns, under the said levy; and that the said defendant do execute, in due form of law, within thirty days from the entering of this decree, a deed of release of all his right and title under the said levy to the said plaintiff, his heirs and assigns, in such form as shall be settled by Theophilus Parsons. Esq. one of the masters in chancery of this court, and that the plaintiff recover his costs.

[NOTE. For decision overruling demurrer to the bill, see Case No. 1,870.]