In re Jeanette DONALD, Debtor.

**Jeanette Donald, Appellant,**

v.

**Nancy Curry, Chapter 13 Trustee; Wells Fargo Bank, N.A., Appellees.**

**BAP No. CC–04–1570–KMAB. Bankruptcy No. LA 04–24773–SB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 2005.

Filed July 19, 2005.

Before: KLEIN, MARLAR, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The debtor appeals from an order transferring her bankruptcy case from the Central District of California to the Northern District of Georgia under 28 U.S.C. § 1412 for improper venue. The debtor contends her domicile is California. We AFFIRM the factual determination that the debtor's domicile is in Georgia. Moreover, regardless of domicile, transfer was permissible.

## FACTS

After living many years in California, the debtor, Jeanette Donald, moved to Georgia in 1999 with her spouse. She remained in Georgia after her spouse died in February 2001, maintaining a residence in Waleska, Georgia, which she mortgaged in 2003. The Social Security Administration sends payments to her Georgia residence.

In May 2004, Ms. Donald traveled to California for a contract job in Los Angeles that turned out to last about thirty days, after which she returned to Georgia. While in California she stayed with a friend and did not obtain her own residence.

On July 6, 2004, after returning to Georgia, Ms. Donald filed a chapter 13 bankruptcy case in the Central District of California for the apparent purpose of curing the mortgage default on her Georgia residence. Her petition used the address of her friend in Whittier, California, with whom she had stayed.

The chapter 13 plan proposed to cure the Georgia mortgage default, pay a Georgia tax collector, and pay the full $1,304.82 in general unsecured debt (owed mainly to national creditors).

At the meeting of creditors on August 24, 2004, Ms. Donald testified that her address was in Waleska, Georgia, that the Whittier address on her petition belonged to a friend, and that she had been back in California only temporarily. When questioned about venue, she said, "well maybe we can transfer."

The trustee announced an intention to object to venue and, three days later, filed an objection to plan confirmation on the grounds of improper venue under 28 U.S.C. § 1408(1) and of plan infeasibility under 11 U.S.C. § 1325(a)(6). Her mortgage creditor objected to confirmation on the basis that her schedules did not reveal income sufficient to fund the proposed plan.

On the day of the confirmation hearing, Ms. Donald amended her schedules to add $4,000 per month income from employment in Georgia that was obtained during the case. She also filed a memorandum of points and authorities in support of confirmation and her choice of venue based on domicile.

She argued, first, that the trustee waived the venue issue by not filing a separate transfer motion in addition to as-

serting improper venue as an objection to plan confirmation and, second, that venue was proper in California based on domicile.

In her declaration supporting her position regarding domicile, she averred that she did not relinquish her California domicile when she and her spouse moved to Georgia in 1999. She added that she always intended to return to California even though she remained in Georgia for three years after her husband's death.

During argument, the court inquired whether transfer would be an appropriate resolution. Debtor's counsel agreed that transfer was an option available to the court.

The court agreed that California was not a proper venue and ordered transfer to the Northern District of Georgia. Its written order unambiguously referred to lack of domicile. Its oral ruling also noted that "under the circumstances of the case," transfer would "be appropriate."

The transfer order was entered November 15, 2004. The notice of appeal was filed November 18, 2004, with a motion for stay pending appeal. The bankruptcy clerk transmitted the pleadings, transfer order, and copy of the docket to the Northern District of Georgia on November 18, 2004, which papers were docketed by the clerk of that court on November 23, 2004. The bankruptcy court granted a stay pending appeal on November 24, 2004. On December 17, 2004, our clerk's jurisdictional query about the apparent interlocutory nature of the appeal drew a responsive motion for leave to appeal, which we granted.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). As we shall explain, we have jurisdiction under 28 U.S.C. § 158(a)(3).

## ISSUES

1. Whether appellate jurisdiction ended with delivery of the case files to, and docketing by, the transferee district.

2. Whether an objection to venue is waived when it is interposed as a defense to a contested matter under Federal Rule of Bankruptcy Procedure 9014, without making a separate motion to transfer or dismiss contemplated by Rule 1014(a).

3. Whether venue was properly laid in the Central District of California under 28 U.S.C. § 1408(1) on a theory of domicile.

4. Whether transfer was permissible under 28 U.S.C. § 1412.

## STANDARD OF REVIEW

 Our appellate jurisdiction is a question of law that we raise sua sponte and resolve de novo. *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999). Domicile premised upon intent and presence involves mixed questions of law and fact reviewed for clear error. *Lowenschuss v. Selnick (In re Lowenschuss)*, 171 F.3d 673, 684–85 (9th Cir. 1999); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.1986). A decision to transfer a case to another district is reviewed for abuse of discretion. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000).

## DISCUSSION

We must resolve the question of our jurisdiction before turning, in order, to the issues presented by the parties.

### I

An order transferring a case to another district under the bankruptcy transfer statute, 28 U.S.C. § 1412, is interlocutory for the same reasons that transfer orders under 28 U.S.C. §§ 1404 and 1406 are

interlocutory.[1] *Varsic v. United States Dist. Ct.,* 607 F.2d 245, 251 (9th Cir.1979) (28 U.S.C. § 1406); *United States Tr. v. Sorrells (In re Sorrells),* 218 B.R. 580, 582 (10th Cir. BAP 1998); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.60 (3d ed.2005) ("MOORE'S"); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3855 (2d ed.1986) ("WRIGHT & MILLER"); 1 COLLIER ON BANKRUPTCY ¶ 4.05[2] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev.2005) ("COLLIER").

■ Appeal of an interlocutory order transferring venue under 28 U.S.C. § 1412, which is regarded as doing double duty for both §§ 1404 and 1406, requires leave to appeal.[2] 28 U.S.C. § 158(a)(3).

A timely notice of appeal, however, may be the basis for granting leave to appeal an interlocutory order, even without a separate motion for leave to appeal. Fed. R. Bankr.P. 8003(c).

A timely notice of appeal was filed on November 18, 2004. We later issued a Clerk's Order questioning finality, which precipitated the filing of a motion for leave to appeal on December 17, 2004, which we granted. Our order granting leave to appeal related back to the timely filing of the notice of appeal.

The differentials in these various dates potentially make a difference because ap-pellate jurisdiction ordinarily terminates when the transfer motion is granted and the papers are entered in the transferee court's docket. *Lou v. Belzberg,* 834 F.2d 730, 733 (9th Cir.1987) (28 U.S.C. § 1292); *accord, e.g., In re Sosa,* 712 F.2d 1479, 1480 (D.C.Cir.1983); *In re Nine Mile Ltd.,* 673 F.2d 242, 243 (8th Cir.1982); *In re SW Mobile Homes, Inc.,* 317 F.2d 65, 66 (5th Cir.1963).

■ Once the transferee court receives and dockets the case files, the transferor court generally loses jurisdiction over the case, as does the transferor court's appellate court. *Lou,* 834 F.2d at 733 (28 U.S.C. § 1404); *accord, Wilson v. City of San Jose,* 111 F.3d 688, 692 (9th Cir.1997).

■ There are two exceptions to this so-called "docketing rule." First, an appellate court's jurisdiction resulting from a timely notice of appeal filed before the transferee court dockets the matter is not terminated upon completion of the transfer. *Lou,* 834 F.2d at 733. Second, even after docketing in the transferee court, mandamus remains available to require the transferor court to vacate a transfer order if the transfer was too hasty. *NBS Imaging Sys., Inc. v. United States Dist. Ct.,* 841 F.2d 297, 297–98 (9th Cir.1988). The first exception applies here.

■ We obtained jurisdiction over this appeal as of November 18, 2004, by virtue

---

1. The transfer statutes provide, in relevant parts:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
28 U.S.C. § 1404(a).

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.
28 U.S.C. § 1412.

2. It has been held that §§ 1404 and 1406 comfortably coexist with § 1412 and apply in bankruptcy cases. *See In re Petrie,* 142 B.R. 404, 406 (Bankr.D.Nev.1992). We need not take a position, as the relevant standards in this case are the same.

of the filing of the timely notice of appeal before the transferee court docketed the matter. It makes no difference that a motion for leave to appeal was not filed and granted until later. A bankruptcy appellate court is entitled to treat the timely notice of appeal as the equivalent of a motion for leave to appeal. Fed. R. Bankr.P. 8003(c).

Similarly, it is a red herring that the bankruptcy court granted the motion for stay pending appeal on November 24, 2004, after the papers were docketed in the transferee court. Appellate jurisdiction had attached when the timely notice of appeal was filed. *Lou,* 834 F.2d at 733. This makes it unnecessary to consider questions of mandamus over a too-hasty transfer. *NBS Imaging Sys., Inc.,* 841 F.2d at 298.

Concluding we have jurisdiction under 28 U.S.C. § 158(a)(3), we proceed to consider the merits.

## II

■ Appellant's first argument is that the venue objection was waived when the chapter 13 trustee did not file a separate motion to dismiss in addition to asserting improper venue as an objection to plan confirmation.

Specifically, it is contended that it is insufficient for the trustee to have asserted improper venue in an objection to plan confirmation filed three days after the meeting of creditors at which the debtor testified regarding facts pertinent to venue and even suggested the possibility of transfer. Appellant does not contend that this assertion of improper venue was untimely. Rather, she contends that a separate motion under Rule 1014(a) was required. Fed. R. Bankr.P. 1014(a). We are not persuaded that Rule 1014(a) is the exclusive method of questioning venue.

The venue question was formally raised and squarely litigated. The appellant responded to the objection with a brief defending her choice of venue, accompanied by a supporting declaration asserting that she had not relinquished her California domicile when she moved to Georgia in 1999.[3] The confirmation hearing itself focused on venue, the argument of the chapter 13 trustee being that venue was improper and that the case belonged in the Northern District of Georgia. The court agreed and ordered transfer.

The premise of appellant's argument is that Rule 1014(a), which provides the procedure for transfers involving venue issues, permits only a "timely motion of a party in interest." Fed. R. Bankr.P. 1014(a). This argument contradicts the Bankruptcy Code and ignores other available procedures for contesting venue.

■ First, the court has the power to transfer a case sua sponte under 11 U.S.C. § 105(a) notwithstanding the reference in Rule 1014(a) to a motion by a party in interest: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a); *Wilson v. Reed (In re Wilson),* 284 B.R. 109, 111 (8th Cir. BAP 2002) (sua sponte transfer). When § 105(a) is employed by a court, the crucial question is whether the process utilized fairly placed appellant on notice of

---

**3.** Since appellant was content with her declaration and did not seek to testify at the hearing, she waived any issue regarding the manner in which this evidence was taken. *See* Fed. R. Bankr.P. 9014(d) ("Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.").

what was at stake and afforded an opportunity to respond. That requirement was plainly satisfied in this instance.

In addition, while Rule 1014(a) provides an independent method for raising a venue question early in the case, it need not be construed as the sole procedural mechanism for accomplishing that purpose.

It is, as here, permissible to object to venue in a timely objection to plan confirmation. An objection to chapter 13 plan confirmation is a "contested matter" governed by Rule 9014. Fed. R. Bankr.P. 3015(f) ("An objection to confirmation is governed by Rule 9014."). All parties in interest are implicated and entitled to be heard on the question of confirmation.

It is a misconception that defensive matters, such as improper venue, cannot be raised in Rule 9014 contested matters. To be sure, Federal Rule of Civil Procedure 12(b), which is incorporated by the bankruptcy adversary proceeding rules, does not apply in contested matters. *Compare* Fed. R. Bankr.P. 9014, *with* Fed. R. Bankr.P. 7012(b), *incorporating* Fed. R.Civ.P. 12(b)-(h). The consequence, however, is merely that the defensive matters that otherwise could be raised either by motion or asserted in an answer must, in a contested matter, be asserted directly in the opposition. This result could hardly be otherwise, as it would be extraordinary and nonsensical to hold that defects in jurisdiction, process, venue, and entitlement to relief could not be asserted defensively in a contested matter.

Improper venue is the proper subject of a Rule 12(b)(3) motion that may be raised in the opposition to a contested matter. Although Rule 9014 does not authorize a Rule 12(b)(3) defense to be asserted by

separate motion, there is no impediment to asserting improper venue in defense of a contested matter, so long as it is raised in a timely fashion.

Since objections to venue need to be resolved early in a case and may be waived if not timely raised, the key question is whether the procedure the chapter 13 trustee utilized to question venue—objection to plan confirmation—was timely.

Chapter 13 is designed to have plan confirmation proceedings occur relatively early in the case. The plan must be filed within fifteen days after the chapter 13 filing. Fed. R. Bankr.P. 3015(b). It follows that objections to confirmation are generally in order early in the life of a chapter 13 case, which is the logical point at which venue questions should be raised. This case fits that pattern.

In short, the venue issue was timely raised and in a procedurally correct manner.

### III

The principal substantive question is whether appellant has a California domicile, which is the sole possible basis for venue under the facts of this case. The question subdivides into the question of what law governs the determination of "domicile" and, then, how the applicable law regards the appellant.

### A

 The parties incorrectly assume that state law, here California law, controls the meaning of "domicile" in the basic bankruptcy venue statute, 28 U.S.C. § 1408(1).[4] It does not.

---

4. The bankruptcy venue statute provides:
 Venue of cases under title 11
 Except as provided in section 1410 [venue of cases ancillary to foreign proceedings]

of this title, a case under title 11 may be commenced in the district court for the district—

### 1

The meaning of a term such as "domicile" in a federal statute ordinarily presents a federal question to be determined under federal common law unless Congress unambiguously adopts state law. *Cf.* 13B WRIGHT, MILLER & COOPER § 3612; *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir.1983).

 It is presumed that, absent indication to the contrary, "Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (*"Holyfield"*), *quoting Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943).

 One rationale for this presumption is that federal statutes are normally intended to have uniform application. A state-law definition will be inferred as applicable in a federal statute only where it is plain that uniformity was not intended. *Holyfield*, 490 U.S. at 43–44, 109 S.Ct. 1597. The Supreme Court has explained that non-uniform state-law definitions of domicile could produce nonsensical results in frustration of the purpose of the statute. *Id.* at 45–46, 109 S.Ct. 1597.

 The status of domicile as a federal question to be resolved in accordance with federal common law does not, however, mean that the state law of domicile is utterly irrelevant. Well-settled state law informs the understanding of what Congress meant when using an undefined term. *Id.* at 47, 109 S.Ct. 1597. Thus, federal courts may look to state law for guidance regarding definitions, concepts, and policies. 13B WRIGHT, MILLER & COOPER § 3612, *quoting Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir.1973).

### 2

The initial task under the *Holyfield* analysis is to examine Judicial Code § 1408(1) to ascertain whether there is any indication that Congress intended to adopt non-uniform state-law definitions of domicile when it enacted the basic bankruptcy venue statute. We conclude that Congress did not so intend.

#### a

It is, of course, fundamental that federal bankruptcy statutes are enacted pursuant to the power of Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONS., ART. 1, § 8. Since the Constitution requires uniformity, it follows that the presumption of uniformity particularly applies to bankruptcy legislation.

To be sure, much about bankruptcy does turn on state law. Property interests, in the absence of a particular federal interest that requires a different result, are created and defined by state substantive law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Most debts are likewise governed by substantive state law. *Cf.* 11 U.S.C. § 101(5). Bankruptcy trustees can rely on "applicable," *i.e.* state, law to avoid transfers. 11 U.S.C.

---

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

§ 544(b)(1). Debtors may invoke state law exemptions, and Congress has gone so far as to authorize states to supplant the uniform debtor's exemptions from property of the estate. 11 U.S.C. § 522(b)(1).

While these and other invocations in the Bankruptcy Code of "applicable law" and "applicable nonbankruptcy law" make the determination of substantive state law questions a matter of bankruptcy routine, the overall structural theme of the Bankruptcy Code is nevertheless one of uniform federal law.

b

The venue provision applicable to the Bankruptcy Code was enacted as 28 U.S.C. § 1472(1) in the Bankruptcy Reform Act of 1978. Pub.L. No. 95–598, § 241, 92 Stat. 2669 (Nov. 6, 1978) (repealed 1984). It was re-enacted in 1984 in its current form as § 1408(1) without substantial change.[5] Pub.L. No. 98–353, § 102(a), 98 Stat. 334 (July 10, 1984).

The legislative history of the 1978 act explained that the venue provision was derived from § 2 of the Bankruptcy Act of 1898 and from former Bankruptcy Rule 116. S.Rep. No. 95–989, 95th Cong. 155 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5941; H. Rep. No. 95–595, 95th Cong. 446 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6401–02.

The 1898 version was couched in terms of jurisdiction. It provided that courts of bankruptcy had original jurisdiction to "adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months or the greater portion thereof." Bankruptcy Act of 1898, § 2, 30 Stat. 544, *codified at* 11 U.S.C. § 11(a)(1) (repealed 1979).

The 1973 version that appeared as Bankruptcy Rule 116 treated the matter solely as a question of venue: "A petition by or against a natural person may be filed in the district where the bankrupt has had his principal place of business, residence, or domicile for the preceding six months or for a longer period thereof than in any other district." Bankruptcy Rule 116, 411 U.S. 1012 (1973). The Advisory Committee explained that the shift from jurisdiction to venue resulted from settled case law that Bankruptcy Act § 2 related primarily to venue, even though phrased in terms of jurisdiction. Bankruptcy Rule 116, advisory committee note; 1 James Wm. Moore, Collier on Bankruptcy ¶¶ 2.13 & 2.16 (14th ed.1976).

c

Judicial treatment of domicile as a federal question for purposes of bankruptcy venue dates back to 1898.

The choice of domicile as a basis for proceeding under the 1898 statute did not occur upon a blank slate. Federal courts had long since adopted domicile as a proxy for "citizenship" under the diversity jurisdiction. *E.g., Morris v. Gilmer,* 129 U.S. 315, 328, 9 S.Ct. 289, 32 L.Ed. 690 (1889) (Harlan, J.); *Briggs v. French,* 4 F. Cas. 117, 118 (C.C.D.Mass.1835) (No. 1,871) (Story, Circuit Justice). To this day, domicile remains the benchmark for citizenship for purposes of diversity jurisdiction. *See, e.g., Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 857 (9th Cir.2001); Restatement (Second) Conflict of Laws (1988 Revisions) § 11, cmt. o ("Domicil for diversity of citizenship purposes is governed by federal law and may differ from domicil in the local law of a state.") ("Restatement"); 13B Wright, Miller & Cooper § 3611.

When, from the outset of the Bankruptcy Act of 1898, the courts relied on the

---

**5.** A comma was deleted and "180" was spelled out.

settled body of federal decisions interpreting domicile for purposes of federal jurisdiction to determine bankruptcy domicile, they were operating in the mainstream of federal jurisprudence. *In re Filer*, 108 F. 209, 211 (S.D.N.Y.1900); *In re Williams*, 99 F. 544, 545–46 (D.Wash.1900). This remained the case through 1978.

Nothing about the enactment, in conjunction with the 1978 Bankruptcy Code, of the present version of the bankruptcy venue statute, first as Judicial Code § 1472(1) in 1978 and later as Judicial Code § 1408(1) in 1984, suggests that Congress intended to shift the status of domicile from a question of federal common law to a question of state law. To the contrary, Congress explained that the venue provisions were based on prior law.

3

The next task under the *Holyfield* analysis is to give content to the term "domicile" in the bankruptcy venue context, which entails considering the generally accepted meaning of the term in light of the purpose of the statute. *Holyfield*, 490 U.S. at 47–48, 109 S.Ct. 1597.

Because the meaning of domicile may be affected by the purpose for which the analysis is made, we draw particularly upon the rich lore of decisions regarding the analogous question of determining citizenship for purposes of federal diversity jurisdiction.[6] 13B WRIGHT, MILLER & COOPER § 3612. The basic outlines of domicile,

however, are well established and transcend most purposes. *Holyfield*, 490 U.S. at 48, 109 S.Ct. 1597; RESTATEMENT §§ 11–23.

In general, domicile is one's permanent home, where one resides with the intention to remain or to which one intends to return and to which certain rights and duties are attached. *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914) (Holmes, J.); *Kanter*, 265 F.3d at 857; 13B WRIGHT, MILLER & COOPER § 3612.

Everyone has a domicile and nobody has more than one domicile at a time. RESTATEMENT § 11. Once established, domicile continues until superseded by another domicile. *Id.*, § 19. One may reside in one place and be domiciled in another. *Holyfield*, 490 U.S. at 48, 109 S.Ct. 1597.

For adults, a domicile of choice is established by simultaneous physical presence in a place and an intention to remain there. *Id.* at 48, 109 S.Ct. 1597; *Kanter*, 265 F.3d at 857; RESTATEMENT § 15.

The modern rule is that a wife retains capacity to acquire domicile of choice independent of her spouse. RESTATEMENT § 21.[7]

We conclude that Congress did not intend domicile in the bankruptcy venue statute to differ from these general rules.

---

**6.** We are mindful that Bankruptcy Code § 522(b)(2) uses domicile as the basis for determining which state's exemptions are available. 11 U.S.C. § 522(b)(2). The § 522(b)(2) domicile decisions appear to be consistent with domicile decisions under the Judicial Code. *E.g., Lowenschuss*, 171 F.3d at 684 (11 U.S.C. § 522(b)(2)), *citing Lew*, 797 F.2d at 752 (28 U.S.C. § 1332).

**7.** The 1988 Revision to the Restatement reworded the rule to: "The rules for the acqui-

sition of a domicil of choice are the same for both married and unmarried persons." RESTATEMENT § 21. The old common-law rule had been that a wife takes her husband's domicile. During the twentieth century the rule declined to a mere presumption and by 1988 was abandoned altogether. *Id.*, cmt. a (old common-law rule "is clearly inconsistent with contemporary views relating to the legal position of married women").

4

■ When a person's domicile is in doubt, the difficult question is usually whether the individual had the requisite subjective intent. This enquiry is "essentially factual" in a sense that requires consideration of all the circumstances. *Lew,* 797 F.2d at 750; *accord Coury v. Prot,* 85 F.3d 244, 251 (5th Cir.1996); 13B WRIGHT, MILLER & COOPER § 3612; 15 MOORE'S § 102.36[1].

■ One's own declarations regarding intent are pertinent but ordinarily will be substantially discounted by the court when inconsistent with objective facts. *Coury,* 85 F.3d at 251; *Lew,* 797 F.2d at 750; 13B WRIGHT, MILLER & COOPER § 3612; 15 MOORE'S § 102.36[2]. The Supreme Court has noted that a declaration regarding intent for purposes of domicile "is, of course, to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." *Dist. of Columbia v. Murphy,* 314 U.S. 441, 456, 62 S.Ct. 303, 86 L.Ed. 329 (1941) (tax domicile).

B

■ In this instance, the debtor's sole evidence that she had never relinquished her California domicile was her declaration to that effect. Objective facts supported the contrary inference of domicile in Georgia. After her spouse died, she remained in Georgia. She owned a house in Georgia. Her social security payments were directed to Georgia. The purpose of the bankruptcy filing was to rescue the Georgia residence from mortgage default.

This objective evidence suggested that the debtor had, while residing in Georgia, formed the requisite intent to remain there indefinitely. The evidence further supported an inference that having changed her domicile from California to Georgia, she did not succeed in changing it back to California during her thirty-day contract position during which she stayed with a friend.

While the court could have chosen to believe the debtor's testimony that she had not relinquished her California domicile in the face of other objective evidence suggesting a Georgia domicile, it gave greater weight to the objective evidence. Either conclusion was a permissible view of the evidence.

Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Duckett v. Godinez,* 109 F.3d 533, 535 (9th Cir.1997).

Hence, the court's ruling that the debtor's domicile was in Georgia at the time of the filing was not clearly erroneous.

IV

■ Even if the trial court erred on the domicile issue and venue was actually proper in California, such an error would be harmless because a discretionary change of venue was permitted under 28 U.S.C. § 1412.[8] The transfer issue was raised by the court during the hearing; the debtor's counsel agreed that transfer to Georgia was an option.

We are not permitted to reverse for reasons that do not affect the substantial rights of the parties. 28 U.S.C. § 2111;

8. Section 1412 provides:
A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.
28 U.S.C. § 1412.

Fed. R. Bankr.P. 9005, *incorporating* Fed. R.Civ.P. 61. Moreover, we can affirm for any reason supported by the record. *Dittman v. California,* 191 F.3d 1020, 1027 n. 3 (9th Cir.1999); *Com-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.),* 278 B.R. 189, 196 (9th Cir. BAP 2002). Accordingly, if the transfer satisfies the standards of § 1412, we could not reverse.

The § 1412 statutory standards for transferring a bankruptcy case invoke the "interest of justice" and "convenience of the parties," but, unlike the general federal transfer statute, do not expressly include convenience of witnesses. *Compare* 28 U.S.C. § 1412, *with id.* § 1404(a); 1 COLLIER ¶ 4.04[3]. Whether, however, this distinction makes any difference in the end is debatable.

The analysis of any combination of "interest of justice" and "convenience of parties" under § 1412 is inherently factual and necessarily entails the exercise of discretion based on the totality of the circumstances, which may include considerations regarding witnesses and the presentation of evidence.

Thus, a typical laundry list of non-exclusive factors, which usually adds up to a totality-of-circumstances analysis, takes witnesses into account: (1) proximity of creditors to Court; (2) proximity of debtor to Court; (3) proximity of witnesses necessary to administration of estate; (4) location of assets; (5) economic and efficient administration of case; (6) need for further administration if liquidation ensues. *See Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.),* 596 F.2d 1239, 1247 (5th Cir.1979), *cited with approval, In re Enron Corp.,* 274 B.R. 327, 343–49 (Bankr.S.D.N.Y. 2002); 1 COLLIER ¶ 4.04[4][a][ii].

■ Such factors, however, when distilled to their essence, reveal that they are mere secondary tools facilitating the ulti-mate § 1412 analysis, which entails a balancing of due process concerns of assuring appropriate access to the court for all parties in interest against the economic and efficient administration of the case. While it may be economically efficient for those in control of a bankruptcy case to administer it in a location that handicaps parties in interest, the integrity of the bankruptcy process requires that the natural enemies have reasonable access to the court. *Cf.* 1 COLLIER ¶ 4.04[4][a][ii].

In this instance, those considerations support a Georgia venue over a California venue. The debtor concedes that she is a Georgia resident, which also necessarily follows from her need to ground her California filing on a theory of domicile. Her property, both real and personal, is located in Georgia. Her financial accounts are located in Georgia. Her primary creditor was the mortgagee on her Georgia mortgage. The rest of her creditors are mainly either Georgia or national creditors.

These connections warrant a conclusion that a Georgia venue optimally suits the persons best situated to monitor the chapter 13 case, to be heard regarding the terms of the chapter 13 plan, and to protect their interests if the case becomes a chapter 7 liquidation. It also suits the debtor who continues to reside in Georgia, who, like most of her creditors, would otherwise have to travel to California for a court appearance. Indeed, the debtor, at her meeting of creditors, raised the possibility of transfer. The court, the chapter 13 trustee, and the debtor's counsel all addressed the question of transfer during the hearing.

In short, since transfer of the case to the Northern District of Georgia was plainly permissible under § 1412, the court did not abuse its discretion in ordering a transfer.

It follows that any error with respect to the determination of domicile does not affect substantial rights and is harmless.

## CONCLUSION

The bankruptcy court did not err when it transferred the debtor's bankruptcy case to the Northern District of Georgia. The debtor's subjective intent to remain a domiciliary of California is inconsistent with her actions—specifically, the overwhelming majority of the debtor's contacts are with Georgia. Further, the debtor had ample notice of the trustee's intent to challenge the debtor's case on venue grounds. Because the debtor's domicile lies in Georgia, the court did not err when it transferred her case. Further, even if the debtor's domicile was in California, the court had discretion on this record to order transfer. AFFIRMED.